This case today is the case of the people of the state of Illinois v. James C.R. Nelson. We have Michelle Zalvisco, our appellant, and we have Mr. Tim Ting for the appellee. And you may begin when you're prepared to. May I place the card, Mr. Ting? This case involves a group of randy high school teenagers who couldn't keep their pants on. That's basically what the case is about. As a result of three separate encounters with three separate high school girls, James Nelson, who was in high school himself, was charged with three counts of sexual assault. He was found not guilty of two of them and was found guilty of sexually assaulting S.B. It's a fact-based argument, so I'm going to rely heavily on the facts. He was charged with sexually assaulting her by the use of force or the threat of force. Now, the use of force or the threat of force involves some sort of superior strength or overcoming will or threatening to overcome will or use superior strength. It does not include he made me have sex with him because I was afraid he was going to get mad or even I was afraid his girlfriend was going to get mad. And that's what was going on in this case. The evidence shows that on the night in question, S.B. and her friend Nathan Edwards went to the defendant's house because she was going to be the defendant's girlfriend there. When they got there, they stayed at James' house for a while. His parents were away for the weekend. James' brothers were in another bedroom playing video games. They left to go across. Apparently, this was the trailer park. They went across the parking lot to another friend's house for a while. They knew their other friend, Nathaniel, lived there. They came back to James' house and S.B.'s friend, who brought her there, left. Then it was James, James' girlfriend, McCrary, and S.B. They started playing a drinking game. Oh, I'm sorry. Before that, S.B. said, well, the bottom of her jeans were wet. So she changed out of her jeans, took off her jeans and her panties, and changed into a pair of shorts. They started playing some sort of a drinking game where they either had to take a sip of alcohol or take off some clothes. S.B. admitted that she was freely taking off her clothes, although she put them back on. As part of this drinking game, she kissed McCrary, James' girlfriend. McCrary loved to get food. Defendant kind of put the moves on, if you will, on S.B. She refused his advances, and that was the end of it. When McCrary came home, she started performing oral sex on Defendant right in front of S.B. S.B. didn't protest. She didn't even leave the room. Finally, James decided that he also wanted to have sex with S.B. S.B. said no. James, again, didn't do anything except got up, got mad, and left the room. He went back into a bedroom. James' girlfriend says, if you don't go have sex with him, he's going to be mad. So S.B. and McCrary voluntarily get up and go back to the bedroom. While they're in the bedroom, the girlfriend keeps saying, you should have oral sex with James. Please have oral sex with James or he's going to get mad. S.B. finally relented, and she didn't have oral sex with him, but she did kiss his genitals. James then starts making out with his girlfriend. S.B., again, is being kind of ignored because James and his girlfriend are busy. She doesn't leave the room. She doesn't do anything. In fact, she lays down on the bed with them. While she's laying on the bed with them, James reaches over and puts his hands up her shorts. Again, she doesn't move. She doesn't cry out. She doesn't attempt to leave. She just lays there and lets him do it. Eventually, James gets on top of S.B., takes off her clothes, gets on top of her, and has sex with her. Again, she doesn't make any sort of effort to resist, make any sort of statement, I don't want you doing this. She does nothing. Eventually, James gets off of her and starts going back to his girlfriend. Finally, S.B. decides to leave the room. She doesn't leave the house. She doesn't go across the parking lot to her friend's house that she knows is home. No, she stays in the house. Pretty soon, she decides, well, she needs her jeans that are in the bedroom. So she goes back into the bedroom, voluntarily goes back into the bedroom. While she's back there in the bedroom, James, again, stops having sex with his girlfriend, starts having sex with S.B. He tries to take her shorts down. She resists, but apparently not very much and apparently not very hard, because James eventually gets her shorts down. She doesn't, at that point, cry, resist, scream, fight him, anything. She just complies. He has sex with her. She, at this point, is crying because apparently it was painful. The defendant stops when his girlfriend says, you're hurting her. Now, not to be indelicate, but this is an 18-year-old boy. He probably didn't even know his girl was crying because he was, it was, he was, she was bent over, okay? Not to be indelicate, but he was coming from behind, so he didn't see her face. It doesn't say that she was sobbing or crying out loud. He might not have even known she was crying. So it wasn't until his girlfriend said, you're hurting her, please stop, that he stopped. And at that point is when S.B. finally got up and left the house. The state has not, there's not a scintilla of evidence that any of this was forced, that S.B. was anything other than a willing participant. Later, she probably had some regrets when she was like, oh my gosh, what have I done? But there was nothing presented at trial to indicate at all that the defendant used any kind of force or any kind of threat of force. These three cases were all tried together? Yes, they were. How did that come about? You know, I really don't know. I believe that it was complained of before trial, but they let it all happen to show Marcus offended. But I didn't think that I could complain because he was found not guilty of two of the charges. So I did not complain on this appeal. The shame of this whole thing is, again, the defendant had no idea that he was committing a crime. He had no idea that he was using force, because he wasn't using force. But, you know, he ultimately got sentenced to eight years, which is twice the minimum in this case, for what he, by all evidence, thought was consensual sex and what I think still was consensual sex. Are there any questions about that? What age are we talking about? I saw two different ages in here. Oh, he was... What's S.B.'s age? Fifteen? I think S.B. was either 15 or 16 at the time. She was like a sophomore or a junior, and he was a senior. But he wasn't charged with the underage. He was charged with sexual assaulting her by force. It wasn't the statutory type of rape. It was by force. And that's what the state failed to prove, was that it was by force. Are there any other questions on that? Okay, thank you. If so, you'll have the opportunity for rebuttal, Mr. Ting. Thank you. May I please report? My name is Timothy James Ting, and I represent the people of the state of Illinois. Your Honor, my time has fully arrived to show you why the defendant's conviction of criminal sexual assault should be affirmed. Your Honor, the rules of law here are clear. There are two elements that must be proven beyond reasonable doubt. This is a statement of conviction. One, an act of sexual penetration. And two, the use of force or the threat of the use of force. As the defendant has conceded in both her briefing and oral argument, sexual penetration is not an issue. It is the use of force or the threat of force. Your Honor, I will start with this quote from the Fourth District, the wisely noted People v. Kinney. And I quote, There is a distinction between real consent and mere submission. We should all know the difference. And if we do not, it is incumbent on us to learn. Here, Your Honor, we have in the record several instances that show that Sean B. did not consent to the sexual assault. And the defendant committed the crime. There are three particular areas. One, her verbal denials. Two, her physical resistance. And three, her audible crime. As to her verbal denials, you can find on pages 1206, 1208, and 1209 of the record that Sean B. would not kiss the defendant and would not perform a police shield. You can find on pages 1211 and 1213 that the defendant twice attempted to remove Sean B.'s pants in the first instance of sexual assault. And she tried to put them back on. You can find on page 1213 of the record that when he initially inserted his penis into her vagina, she said, and I quote, It hurts, and I tried to move my arms a little, but he had his arms at my side. Again, 1213 of the record shows definitive, clear testimony, unabutted, that she tried to move. You can find again on page 1217 that she was crying. During the second instance of the sexual assault, she was actually audibly crying. And I will read this part from the testimony just to show you how clear it was from the jury. The state asked, and then what happened? And she says, the defendant started having sex with her. The state, so he placed his penis back into your vagina. Yes. How did that feel? It hurt real bad. And how long was he doing that to you? No idea. I started crying. Did Katie, this is referring to the defendant's girlfriend, say anything? This is a no vote. Yes. What did she say? She said, if you are hurting her, stop. And did he stop? No. But contrary to what the defendant stated in the oral argument, the record rebutts that. The defendant did not stop after his girlfriend saw her crying and said, do not stop. The record has shown, truly, if this court is to apply the rule of law, all reasonable inferences from the record should be applied. And like the most favorable to the state, when we have definitive evidence in the record, this is a case where the threat of the use of force and the use of force is both shown by her physical attempts, her attempts at physical resistance, her verbal denial, and her clear, audible crying that even a third party, i.e., the defendant's girlfriend, said, if you are hurting her, stop. And he did not. Your Honors, the distinction between the several cases the defendant's used are easily distinguished. People v. Warren, in that case, she did not resist. Here we have on page 1211 of the record that she attempted to put her swords back on. And the defendant had his arms at her side. And People v. Denville, which the defense uses, the victim there or alleged complainant there did not resist the physical positioning of the sexual assault. Here the defendant actually bent Shauna B. over the bed so that she could not resist. You can find on page 1216 of the record. And People v. Taylor, which the defense relies on, that complainant was never treated roughly and, in fact, kissed the defendant goodnight. Certainly, these are not the types of cases that share the factual underpinnings of the case at large. Rather, what this case shows is more similar to People v. Bowen than People v. Shauna, in which there were clear denials for the defendant to stop, such as the victim saying, no, leave, stop, please, you're hurting me. Those are the types of facts that we have here. This was a case in which there was clear inferences, in fact, not just inferences, but clear, factual testimony from the victim. Shauna B., the defendant, was threatening the use of force and, indeed, used force in committing a sexual assault. For that reason, the defendant's conviction should be affirmed. And the second issue on appeal is that the defendant's sentence is too strong or too severe. He had eight years, which is, as the defendant correctly points out, is four years more than the minimum. The trial court looked at three areas here to really fashion this sentence in the most appropriate form. Lasting emotional harm to Shauna B., deterrence of other criminals in the future, and criminal history of the defendant. Now, deterrence, as you can find on page 1530 of the record, there's clear cases, multiple cases. I cited a few of them in the brief, but there are more out there, People v. Heston, People v. Quintana, People v. Paraguay. One lengthy census that was 15, 20 years and 30-year sentences for sexual assault. It's not out of the realm of normality. Criminal history, again, that's clearly established. People v. Flores, People v. Garcia-Cordova, People v. Sanders, which I cited. But I want to focus particularly on the lasting emotional harms, the trial court. Let's spend some time on that. As this district has particularly stated, and I quote, emotional harm is practically certain to result from sexual assault. That court stated this in Western State's insurance company version. But, again, this court, not this court, the second district said, degrading acts which cause severe physical and emotional damage to the victims, because perpetrators of sexual assault exhibit an utter contempt for the personal integrity of their victims and the right of those individuals to decide with whom they will establish intimate relationships. But I think perhaps the most telling quote from case laws for People v. Ellison, which states, and I quote, probably the most horrifying kind of victimization another human being can be submitted to is rape. It's probably worse than murder because the rape victim lives to think about it and the murder victim doesn't. Here, Shauna B.'s victim impact statement stated, as you can find on her attachment 5 of the pre-symptom investigation report, I'm sorry. And I quote, no matter how long he's put away, it will never fix what he has done. Since this has happened, I have hardly any self-confidence. I'm always angry. I don't trust anyone behind me. These are not the words of a Randy Heisman. These are the words of a young girl, not even a woman, a young girl who was sexually assaulted, whose innocence was ravaged by the defendant. Eight years was reason. And what were the, apparently there was three charges, and two there was not guilty. What were those charges? Do you know what they said? Those charges stem from other victims. I don't know. Oh, from other victims? Yes, there's three different victims. Okay. And there's two that had also similar encounters with the defendant. And the state decided to put all of them on the state's list. Was one the girlfriend? No, they were beyond the girlfriend. There are other high school students whose defendant had also done similar acts, too. Well, apparently the jury didn't think so. The jury did not think so about that. But it's not this court to rely on matters of... I just want to know what they were. Yeah, but they were consolidated cases with three, two other complainants, which the jury did not find them bad to make sexual assault cases. All the girls came together to make the case. Do you have any other questions? Thank you very much. Thank you, Mr. Payne. Do we have rebuttal? Ms. Golisko? Just briefly, I hope. Her verbal denials. Every time she verbally said stop or verbally expressed that she didn't want to do something, defendant went away. She said, no, I don't want to, while his girlfriend was fine getting food. No, I don't want to kiss you. And defendant, stop. He didn't force the issue. She said, no, I don't want to have oral sex with the girlfriend. No, I don't want to have oral sex with your boyfriend. And she didn't. Defendant didn't force her. Her physical resistance, he was pulling down his shorts and she resisted. He gave up. He didn't force her at that point. He went back on the bed and had sex with his girlfriend. She then went and lay down on the bed with him. Her crying, again, it may have been audible to the girlfriend, who was laying right next to SB. The state implies that he, and I'm trying not to be indelicate, that he bent her over as sort of a position of force, that that was how he forced her to submit. In reality, that's not an unusual sexual position. So we don't know that he did that to obtain force over her. He was behind her. He might have been standing up where it's not clear in the record. He might not have heard her audibly crying. It doesn't say that she was screaming or even loudly crying, just that she was crying so that the girlfriend, who was laying right next to her, could hear. It's possible the defendant didn't even hear. When the girlfriend said stop, defendant maybe didn't the first time, but he did shortly thereafter, the second time the girlfriend said it. Again, it's an 18-year-old boy, and not to be indelicate, but he might not have heard the girlfriend the first time. He was concentrating on what he believed was consensual sex. The emotional harm as to the sentencing, I believe that this girl didn't feel guilty. She felt bad. She really, really regretted having sex with James. But James did not force her. The state did not prove that he forced her, and he didn't force her. Are there any other questions? Thank you. Thank you both for your arguments and reasoning. We'll take the matter under advice.